UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| GREGORY COLLINS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 07-109-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LOUISVILLE LADDER, INC., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

Is a company's name relevant in determining its principal place of business when its operations are located in several states? That question is presented in the motion to remand currently pending before the Court. According to the Plaintiff, the name "Louisville Ladder" should be considered, together with the company's other business operations, in determining whether the Defendant is a Kentucky corporation. The Defendant, however, asserts that because it has outsourced most of its manufacturing and related activities to Mexico, the remaining business activities in Kentucky – and its name – are inconsequential in determining its principal place of business.

After examining the Defendant's total activities according to the test set out in *Gafford v. General Electric Co.*, 997 F.2d 150 (6th Cir. 1993), the Court concludes that the company's Louisville activities are dispositive under the circumstances presented. And while its name is not dispositive of the issue presented, it is a relevant factor for consideration. Accordingly, the Court will grant the Plaintiff's motion to remand. However, because application of the total activities

test to the unique facts of this case appears to present a question of first impression, the Court will deny the Plaintiff's motion for fees, costs and expenses.

### I. Relevant Facts

As the name suggests, Defendant Louisville Ladder, Inc. ("Louisville Ladder") manufactures and sells ladders throughout the United States. The company was formed in Kentucky around 1946. Currently, it claims to be the second largest manufacturer of ladders in North America. While the company appears to be wholly-owned by a Mexican entity (Verzatec), its website states that it is "headquartered in Louisville, Kentucky." [*See* Record No. 6; Exhibits 1 and http://www.louisvilleladder.com/historia.asp.] The website also lists a number of warehouse locations throughout the United States and Canada.

Louisville Ladder filed articles of incorporation in Delaware in 1998. [Record No. 6; Exhibit 2] However, various state filings indicate that its principal office remains in Louisville, Kentucky at 7765 National Turnpike. This is also the address given for its listed President and Director (Carlos Javier Moreno) and Secretary (Martin Dean Brown). [*See* Record No. 6; Exhibits 3, 4[1] and 5.]

According to Donald Gibson, Jr., Louisville Ladder's Vice President of Engineering, the company leases it property in Louisville. However, it owns the property in Mexico where its manufacturing operations are conducted. He asserts that "all of [the company's] ladders *with*

---

[1] The company's filing in Georgia list its officers' addresses as 7765 National Turnpike, Louisville, Georgia 40214. It appears that Georgia is a typographical error, inasmuch as this is the same Kentucky address and zip code used in other filings.

*the exception of steel products*[2] are manufactured in Mexico." [*See* Record No. 10; Exhibit A.] Further, he states that many other functions relating to the manufacturing operation occur in Mexico, including: design and testing, quality control, shipping, logistics. And while it appears that Mr. Gibson, the Vice President of Engineering, is located in Louisville (see notarization of Gibson Affidavit; Record No. 10, Exhibit A), he claims that the majority of the company's engineers, its corporate books and the majority of its employees are located in Mexico. *Id.*

**II.     Procedural History**

Plaintiff Gregory Collins ("Collins") filed this products liability action in the Clay Circuit Court on February 20, 2007. According to the allegations contained in his Complaint, Collins was injured after a ladder manufactured by the Defendant collapsed, causing him to fall approximately twenty feet. As a result, Collins claims to have suffered severe, permanent injuries. [Record No. 1; attached Complaint]

CT Corporation, the Defendant's registered agent for service of process, was served with the Complaint and Summons on March 1, 2007. On Monday, April 2, 2007, the Defendant removed the action to this Court, alleging diversity jurisdiction. In its Notice of Removal, Louisville Ladder asserted that removal was timely and that under the "total activities test" outlined in *Gafford v. General Electric Co.*, 997 F.2d 150 (6th Cir. 1993), diversity jurisdiction existed because its principal place of business is Monterrey, Mexico. [Record No. 1, p. 2]

---

[2]     This exception is curious, inasmuch as the company ceased manufacturing wood ladders in 2005 according to its website. [See Record No. 6, Exhibit 1] This leaves the Court to wonder where the steel manufacturing facilities are located. Likewise, no information has been provided regarding the extent of these other operations.

On May 1, 2007, Collins filed objections to removal and also moved the Court to remand the action back to the Clay Circuit Court. In support, Collins asserted that removal was not timely and that Louisville Ladder's principal place of business is located in Kentucky.[3]

### III.     Legal Analysis

#### A.     Was Removal Timely?

The statute authorizing removal, 28 U.S.C. § 1441, provides that an action is removable only if it could have been brought initially in federal court. A federal court has original "diversity" jurisdiction where the suit is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of costs and interest. 28 U.S.C. § 1332(a). Additionally, federal courts have original "federal question" jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Here, no federal question has been presented.

While diversity actions may be removed to federal courts, there are several limitations on a party's ability to exercise that right. Title 28, §1446(b), provides that a defendant must remove an action within thirty days "of receipt . . . through service or otherwise, of a copy of the initial pleading setting forth the claim for relief . . . or within thirty days after the service of summons upon the defendant . . ." 28 U.S.C. §1446(b).

In the present case, the parties agree on the relevant dates. CT Corporation, the Defendant's agent for service of process, was served on March 1, 2007. And there is no dispute

---

[3]     It is undisputed that Collins is a citizen of Kentucky and that the amount in dispute in this matter exceeds $75,000.00, exclusive of interest and costs. Therefore, if Louisville Ladder is incorporated in Kentucky or has its principal place of business located in the Commonwealth, this Court would not have jurisdiction over the action.

that Louisville Ladder removed the action on Monday, April 2, 2007. While the deadline for removal would ordinarily have expired on Saturday, March 31, 2007, the Federal Rules of Civil Procedure provide that, in computing any period of time allowed by the rules, or applicable statute, "[t]he last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday. . . in which event the period runs until the end of the next day which is not one of the aforementioned days." Rule 6(a), Fed. R. Civ. P. Therefore, Louisville Ladder had until April 2, 2007, to remove the action. Accordingly, the Court concludes that the Defendant's notice of removal was timely filed.

### B. Is Louisville Ladder's Principal Place of Business Located in Kentucky?

In addition to asserting that Louisville Ladder did not remove this action within the time permitted by the removal statute, 28 U.S.C. §1446(b), Collins argues that the Defendant should be deemed to be a citizen of Kentucky. Therefore, he claims that diversity jurisdiction is lacking. Collins bases this contention on the fact that the company has operated in this Commonwealth since approximately 1946 and continues to maintain its principal offices in Louisville, Kentucky. Further, the company continues to represent in official filings in several states that its principal office and officers are located at 7765 National Turnpike, Unit 190, Louisville, Kentucky 40214.

According to Collins, Louisville Ladder's manufacturing plant was located on Algonquin Parkway in Louisville until 2002 when much of its work was outsourced to Mexico. However, he contends that the Defendant's "basic corporate and personnel records are located in Louisville, Kentucky, along with it's [sic] management personnel who conduct all of it's [sic]

business related administrative activities." [Record No. 6, p. 3] Further, he asserts that the "very name 'Louisville Ladder Inc.' invokes images of Kentucky being it's [sic] principal place of business." *Id.* at 4. Citing *Gafford v. General Elec.*, *supra*, Collins states that Kentucky should be held to be the company's principal place of business under the Sixth Circuit's "total activities" test.

Conversely, Louisville Ladder claims that, while Collins has correctly cited *Gafford* as controlling, he incorrectly attempts to apply it holding to the facts presented. Instead, it contends that Collins uses a nerve center test for determining a company's principal place of business. It argues that the "total activities" test combines the "nerve center" test with the "center of activities" test. [Record No. 10, p. 3-4] And under the "total activities" test, the Court should consider the following factors: (1) where the corporation is qualified to do business; (2) the nature of the business operations; (3) the location from where the revenue is generated; (4) the location of the property; (5) the location of the employees; (6) the location of the operations; and (7) the location of person(s) who direct the day-to-day activities. Based upon the information contained in the Gibson affidavit, it contends that Louisville Ladder's principal place of business is in Mexico. Finally, Louisville Ladder takes issue with Collins assertion that its name is relevant to this determination.[4]

---

[4] In support of its argument that a corporate name does not establish its principal place of business, the Defendant points to Texas Roadhouse, a company founded in Clarksville, Indiana, and incorporated in Delaware. That company maintains its principal executive offices in Louisville (like Louisville Ladder), but has operations in various states, including Texas. However, it asserts that its name does not result in Texas becoming its principal place of business. As will be discussed in more detail in the body of this memorandum, the Court does not believe that this fact, standing alone, is dispositive. However, where a company has significant operations in a state bearing the company's name, the name is not irrelevant to the Court's inquiry. Under such circumstances, the name may be relevant for marketing and other purposes.

The "Total Activities" Test

As both parties correctly indicate, determining a corporation's principal place of business in this circuit is based upon it total activities. *Gafford v. General Electric Co.*, 997 F.2d 150 (6th Cir. 1993). Gafford involved claims of employment discrimination. Prior to trial the plaintiff attempted to have the matter remanded to state court. However, the district court denied the plaintiff's motions. Subsequently, the district court granted summary judgment concerning one claim in favor of the employer, General Electric. The remaining claim was decided by a jury in GE's favor. On appeal, the Sixth Circuit was presented with several jurisdictional issues, including whether the district court had applied the correct standard in determining GE's principal place of business. The court explained that all corporate activities should be considered:

> "The question of a corporation's principal place of business is essentially one of fact, to be determined on a case-by-case basis, taking into account such factors as the character of the corporation, its purposes, the kind of business in which it is engaged, and the situs of its operations. . . . In making this determination, courts have followed various approaches, or "tests." The "nerve center" test emphasizes the situs of corporate decision-making authority and overall control. . . . The "corporate activities"/"place of activity" test emphasizes the location of production activities or service activities. . . . Many commentators have noted that these tests are not mutually exclusive.
>
> [T]he ultimate question is not which test to apply, but rather which consideration, on the basis of the totality of the facts, predominates. . . .
>
> Neither the "nerve center" nor the "place of activity" test inflexibly dictates the corporation's principal place of business. Rather, the tests simply stand for the general rules regarding the determination of a particular corporation's principal place of business: the principal place of business of a far-flung corporation will generally be its nerve center; . . . the principal place of business of a corporation with significant administrative authority and activity in one state and lesser executive offices but principal operations in another state is generally the district

> of the former; . . . and the principal place of business of a corporation with its corporate headquarters in one state and its single activity in another will generally be the state of its operations.

(Citations omitted.) *Gafford*, at 161-162.

Citing *Riggs v. Island Creek Coal Co.*, 542 F.2d 339, 342 (6th Cir. 1976), the *Gafford* court noted that, where the "bulk" of a corporation's business is dispersed over several states, its headquarters assumes more significance as the compelling factor in the principal place of business test. *Gafford* at 162. In making this determination, the *Gafford* court also warned that the place where the principal office is located is not necessarily the place where the principal business is carried on. Therefore, the Sixth Circuit has directed district courts to employ the total activity test, taking into consideration all relevant factors and weigh them in light of the facts of each case.

In the present case, it appears that Louisville Ladder maintained significant business operations in Louisville, Kentucky until 2005 when the majority of its (non-steel related) manufacturing operations were outsourced to Mexico. Since that time, a significant portion of those operations have been conducted outside the United States. However, it further appears that a significant portion of its product is sold in the United States, as evidenced by the various warehouses where its products are stored. Further, while a significant portion of its total employees and engineers are located in Mexico and other states, it employs approximately 42 employees in its Louisville offices. This would appear to include Donald Gibson, Jr., the Vice President of Engineering, as well as Carlos Moreno, the corporate President and Director, and

Martin Brown, the corporate Secretary.  Therefore, it appears that the company has accurately represented in its corporate filings that Louisville, Kentucky is, indeed, its principal office.

Louisville Ladder has not explained the reason for its move to Mexico, nor is it necessary to do so.  However, under the circumstances presented, its retention of the name "Louisville Ladder, Inc., is not irrelevant as its counsel suggests.  Unlike the "Texas Roadhouse" example, Louisville Ladder has a historical connection with Louisville, Kentucky.  And it has maintained a significant presence in the city even after moving a significant portion of its manufacturing operations out of the country.  Therefore, while a name is not be dispositive in determining the company's principal place of business, it is one relevant factor to be considered.

Louisville Ladder is qualified to do business in several states, as indicated in its corporate filings.  Further, it generates revenue from its sales thorough the United States.  Thus, neither factor is controlling in determining the company's principal place of business.  Likewise, the location of its property is not significant as it appears to operate in several locations in the United States, Canada and Mexico.  It also has employees in various states, although it appears that the greatest number work in Mexico.  While the Defendant has not asserted that its day-to-day activities are directed at any particular location, the Court must assume that a significant direction is given from its offices in Louisville as well as its Mexican facility.

The Court has also considered the assertion that Louisville Ladder owns the property where its Mexican facilities are located, but only rents the Kentucky property.  That fact does not appear to be a significant factor in the present analysis concerning its principal place of business.  The Court has also considered the various other activities conducted in Mexico and

find that they do not outweigh its principal Louisville, Kentucky office as the primary factor for consideration. The Court would expect that a company with a foreign manufacturing facility would hire a significant workforce at such a facility. Further, it would be necessary to conduct design, testing and shipping functions from that location. And since the company is a wholly-owned subsidiary of another company, the fact that it maintains its corporate books in Mexico is not a significant factor in this analysis.

In summary, after considering the character of the corporation, its purposes, and the kind of business in which it is engaged (the sale of ladders throughout the United States, manufactured from various materials with significant manufacturing operations in Mexico); and the situs of its operations (Mexico, Canada and several warehouse and business operations in the United States), the Court concludes that the principal place of business of Louisville Ladder, Inc. is Louisville, Kentucky, the location of its principal offices. Therefore, the parties to this action are not diverse and this matter must be dismissed for lack of subject matter jurisdiction.

Request for Fees and Costs

In addition to remand, the Plaintiff seeks an award of costs and expenses. However, as the Defendant correctly notes, "a district court will be more likely to award costs when a case [for removal] is frivolous than when it is close . . ." *Bucary v. R.I.Rothrock*, 883 F.2d 447 (6th Cir. 1989). As the above discussion should demonstrate, the Defendant's arguments are not frivolous and present close questions which have not been addressed previously in the context of a motion to remand. The Court believes it would be improper to award fees, costs or expenses under the circumstances.

### IV.     Conclusion

Having considered the arguments of the parties, and being sufficiently advised, it is hereby

**ORDERED** that Plaintiff Gregory Collins' motion to remand is **GRANTED**. However, his motion for an award of costs and expenses is **DENIED**. This matter is hereby **REMANDED** to the Clay Circuit Court and **STRICKEN** from this Court's docket.

This 3rd day of July, 2007.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge